As soon as the lawyers are ready, in our last case, number 161450, L.K. Mining Company v. Smith. Can I recognize Professor David Rugg in his classroom? Yes. Do you want to do that right now? While we're waiting, I wanted to recognize Professor David Rugg in his class from Duggan L. Law School. We're glad to have you here. Hope that you learned something while you're watching. We're glad to have you. I put a little pressure on you lawyers. Thank you. May it please the court. Jeff Garosukup on behalf of Petitioner L.K. Mining. Your Honors, this case turns on whether Miner Edward Smith had the advanced form of black lung disease known as complicated pneumoconiosis. Now whether he did turned on whose interpretation of a digital chest x-ray was found more persuasive, that of Dr. Miller or that of Dr. Scott. The ALJ went with Dr. Miller's interpretation because two out of 22 treating chest x-rays from the Miner's treating records described large opacities in the lungs. What the ALJ did not address is that while those two treating records showed large opacities, the other 20 x-rays did not show any such large opacities. If a fact finder is to credit an expert because a small minority of the evidence describes a large opacity and thus supports the expert's findings, it stands to reason he must address the large majority of the evidence that it does not describe such opacities and thus contradicts the expert's findings. Dr. Miller's reading was based on a digital x-ray, wasn't it? It was, but the way the ALJ chose to credit Dr. Miller's diagnosis of complicated pneumoconiosis was by turning to the treating experts, excuse me, treating records which contained what are known as treating x-rays describing some opacities. The ALJ took two of those treating records, treating x-rays mind you, which he said described large opacities consistent with what Dr. Miller found on the digital x-ray. The problem is that there were 20 other treating x-rays in those records which do not show or at least do not describe any such large opacities. So that became the key piece of evidence in the ALJ's mind for why Dr. Miller's reading of that digital x-ray was more credible because, well, Dr. Miller says there are large opacities of complicated pneumoconiosis on this digital x-ray. I can see two treating record x-rays which also describe these large opacities. But that leaves aside the fact that there's a large swath of evidence in the treating records that the ALJ did not describe, did not take into account, that directly contradict Dr. Miller's finding of a large opacity. Well, isn't the ALJ entitled to credit one doctor over another? I mean, are you saying that Dr. Miller was rendered incredible? No. By virtue of the fact that there were other multiple x-rays that didn't show the opacity? The ALJ has discretion to credit an expert, certainly, but in order for an ALJ to do so, he has to examine the evidence both for and against the expert's finding. That's what this court said in the C.E.B. Mining the Addison case, which actually the director cited in her response brief. But aren't these the state-of-the-art, though, the digital x-ray? And the ALJ, in fact, had to rely on it as other means because at the time the code was going back to the use of analog? Yes, but the issue here is how the ALJ chose to credit one reading of the digital x-ray over Dr. Scott's contrary reading. Well, Dr. Scott wasn't contrary, though. Dr. Scott said that it was too cloudy to see whether there were opacities or not. Did he not? But that's considered a negative diagnosis for complicated because he's saying that the way the x-ray is found, it can't be read for the possibility of complicated. Well, I don't think you're answering, though. Why couldn't the ALJ just say Dr. Miller was reading using a state-of-the-art tool and saw the evidence sufficient to show complicated pneumocomal use? Because if he's going to describe evidence that he feels validates Dr. Miller's reading, which he said he did, it's incumbent on him to discuss and at least explain why the contrary evidence does not carry weight in his mind. Well, wasn't it part of it, though, because the other doctors hadn't even looked at the x-ray that Dr. Miller relied on? No, Your Honor. With respect, you're confusing two issues. That's the issue of Dr. Castle and Dr. Vachita's review, medical opinions reviewing the evidence. That's another issue which I'd be happy to address if I have the time, but the key issue really for the determination of benefits in this case is whose reading of the digital x-ray is more credible, or at least is properly found more credible, Miller or Scott. And what matters here, and, yes, you're right, an ALJ can base a finding of complicated pneumoconiosis on an expert's reading of a digital x-ray. That's fine. But if the ALJ is going to do that, as he did here, and by doing so say, well, Miller's reading of the x-ray is more credible because of these two treating records, if there are contrary treating records that directly contradict what is found in the two the ALJ chooses to seize on, he's got to explain why the other ones are not persuasive. That's called a balancing of the evidence. Dr. Scott was saying you can't even see these opacities even if they were present. Wasn't that his use? In other words, wasn't he at least inferentially conceding that they could be present? He's just saying you couldn't see them because of the plural effusion. Well, he said because of the pulmonary edema. Oh, I'm sorry. Excuse me. I'm mixing my terms, though. But didn't he say that it was so cloudy in layperson's terms that you couldn't even see the opacities if they were there? That's what he said, that it still doesn't rise to a positive diagnosis. That's right. No, it doesn't. But what I should point out is that this is not what's called a 15-year presumption case. What that means is that the claimant always has the burden of proof to establish the existence of the complicate. So even if we take what I think you're driving at here, even if we take the conclusion that, well, Dr. Scott's reading is perhaps not as credible as the others, there still has to be a sufficient basis to credit Dr. Scott. Not that it's not credible, but it's just inconclusive. Well, but, again, even if you decide that, in order to award benefits, the judge still has to consider the evidence in a reasonable fashion to determine that Dr. Miller's reading is credible. And the key thing here is the way the ALJ chose to do that is he said, well, I'm going to decide whether this large opacity is present by looking at the treating records. I see two of these treating records that do describe a large opacity. Therefore, that's consistent with Miller. If you're going to rely on treating records that show a large opacity and say that's the key piece of evidence, you have to address, at least explain why the other 20 treating records, treating x-rays that don't show that opacity, are not persuasive. The ALJ did not do that. And because of that, there's not really a balancing of the evidence here. It's just looking at one side of the scale. Does the record show whether those other x-rays were digital or analog? They're analog, but so were the two that the ALJ chose to use to credit Dr. Miller's reading. We're looking at two sets of evidence here. We're looking at the digital x-ray, which was the basis of the finding, and the treating record x-rays, which is what the ALJ chose to help validate that reading of the digital x-ray. And my point is that if you're going to look to the treating record x-rays to validate one reading of the digital, you have to at least consider and explain away the contrary treating records that cut against that finding. That's what we do when we weigh the evidence. Otherwise, it's just looking at one side of the scale. The interesting thing I should note about this is that in the respondent's briefs, they do not deny that the ALJ did not consider and analyze that contrary treating record evidence. Instead, they try to excuse it. They say, well, it doesn't matter because the treating records that I talk about in my brief are not actually contrary or refuting Dr. Miller's reading. Okay, but the ALJ did say that many of the x-rays were complicated by the existence of the pulmonary edema, right? Which x-rays are you talking about, the digital or the treating records? The treating. No, I don't believe he did. The only times, to my knowledge, the only times he even mentioned the, I want to say, the other 20 treating records is at a very, very brief mention in the factual statement and when he talks about Dr. Beshida and Dr. Castle's reviewing reports. The key problem is that when the ALJ analyzes Dr. Miller's reading and says, well, this is persuasive because I find these two treating records that also talk about the opacity, one would think in that section of the opinion, he would say, well, yes, I acknowledge that there's the other treating x-rays that also don't even talk about this large opacity and thus seem to cut against Dr. Miller, but they're not persuasive for the following reasons. That's not anywhere present in this opinion. Because of that, I would submit that this can't be considered a reasoned decision under the Administrative Procedure Act because the other contrary evidence is not discussed. This court said in the Addison case, which, again, the director cited, that this is something that has to be done in order to uphold and abort benefits as considered by a weighing of the evidence. Well, all the records are available to the experts, right? Doctors, I think you're referring to Drs. Castle and Beshida. No, no. Who was your expert? Well, my expert that read the digital x-ray was Dr. Scott. My experts who reviewed the record evidence and rendered what are called just opinions on the record as a whole were Drs. Castle and Beshida. Dr. Scott read, he's a radiologist, Dr. Scott read the digital x-ray and rendered an opinion. Drs. Castle and Beshida are pulmonologists. They looked at the records in case and the treatment records and the death certificate and they rendered an opinion about complicated pneumoconiosis and death causation. Does that address your question? Sometimes it's better to try to get off the jargon and the names and onto the ñ What I was really getting at is it seemed to me that the ñ that Ms. Smith's expert relied on what you call these two treating records, right? Well, Ms. ñ You just spent a lot of time talking about that. Well, no, when I'm saying the ALJ relied on the treating records to credit Dr. Miller's reading of the digital x-ray. Dr. Miller was Ms. Smith's expert. Well, those treating records were available to your experts, too. Did they opine on them? Yes, yes, they reviewed all of them. And they said that they didn't ñ that they took out these two and they said that they really didn't show these ñ this evidence? Drs. Castle and Beshida are my experts. They reviewed the treating records, yes. Dr. Castle, my first expert, concluded that while he's unsure about the presence of pneumoconiosis, which is ñ there is too ñ Did they review the x-ray interpretation? Did they? They reviewed the treating records. They did not review all of the digital x-ray interpretation. They didn't review the x-ray that Dr. Miller relied on on finding complicated pneumoconiosis? Dr. Castle did not. Dr. Beshida, my other expert, actually did review one of the interpretations of the digital x-rays, yes. But I will say that is one of the ñ the interpretation of the digital x-ray he reviewed, the claimant, for whatever reason, did not submit into the record. But in any event, Dr. Beshida, yes, did review one of the digital x-ray interpretations that was similar to the one offered by the claimant, by Dr. Miller. But if I could just make one point about this, these really are two issues, all right? The one issue, and this is the dispositive issue for the Award of Benefits, is whether Dr. Miller or Dr. Scott ñ I'll actually just say ñ whether Dr. Miller's reading of the digital x-ray was credited in a manner appropriate with law. The separate issue, which we're talking about here, is whether the ALJ properly discredited the reports of Drs. Castle and Beshida. Even if you agree with the ALJ that Drs. Castle and Beshida's reports were properly discredited, that does not save the Award of Benefits in this case because the Award of Benefits turns on the presence of complicated pneumoconiosis, which is the claimant's burden to prove. The evidence offered to prove it is Dr. Miller's reading of that digital x-ray. So I guess your argument is not that there is no reasonable way that the ALJ could have found against you, but that the ALJ didn't explain his rationale. That is correct. I'm not at all saying that the ALJ can never credit Miller. I mean, if I was, I'd be asking for a reversal. What I'm saying is that the ALJ, in reviewing the evidence to find Miller is credible, he did not consider alongside the two treating x-rays that he found supported Miller the 20 treating x-rays that do not support Miller because they don't show the large opacity, which he felt was the key issue. This man was very, very sick with a lot of different things. When you're in the hospital with heart disease, they may not be talking about your pneumoconiosis or not. Yes. You know, so that I take your point. I understand your position. Okay. I guess in response to that, I think we have to take the doctor's interpretations at their word. I mean, we can infer why or why not. But, again, these are factual issues. The ALJ can address that below. That may well be a reason to not credit the 20 other x-rays, but the decision was not made. That's why this is not as direct. Of course, we don't know that. You're having us say that because it's not expressly discussed. But that is another reason, actually. I'm sure you sound like you're an experienced trial lawyer. You often get in front of trial judges, and they give more summary opinions than you might wish. I've actually only had one trial in my life, but I appreciate that. That's actually another thing. That's the way the trial work goes these days. Everything is just settled. Well, to address your point, you're right. We don't know what the ALJ thought of those records and what he did not know. But that's not atypical. That often is the case. But the problem is that, according to this court's precedent, we need to know what the ALJ decided and why he decided as he did. I mean, that is not only in the Addison case, the director cites. It goes back to several cases from the 1990s, Wayne Hollow. There's no case from this court that says that if you have 30 experts or 30 readings, you have to go through each one. There isn't a case. There is. I would be happy for the citation to it. You're right. They don't have to necessarily go through every single thing in the record. But the problem is, in this case, if the ALJ is going to find that the two he credits are credible for reason A, namely, that they show a large opacity, it stands to reason that the other evidence that says there is no reason A, no complicated opacity, that's directly relevant evidence. I mean, to not address the 20 that cut against that one finding, that becomes the key finding in this case. It's your representation that all 20 cut against that finding? The 20 from my – Is there evidence in this record that says that? From my review of the records, those 20 do not show a large opacity. That's not the same as cutting against it, not the same as an opinion saying there is no. I would submit it is the same. But, Your Honor, the two that the ALJ looked at also don't say that this is a large opacity if complicated. They just note a large opacity. If he makes that the key issue, then by inference, he has to address the ones that don't show a large opacity. Thank you very much. Thank you. Mr. Stamen. May it please the Court, I am Leonard Staten, appearing today on behalf of the respondent, Hazel Smith, who is the widow of Edward Smith, who worked 34 years as an underground coal miner. In this case, the ALJ was faced with two diametrically opposite reports. The reading by Dr. Miller of the 62409 chest X-ray showing the presence of pneumoconiosis, which had progressed to complicated pneumoconiosis, and the reading of Dr. Scott, who, as Judge Keenan pointed out, actually said he could not say whether pneumoconiosis was present or not. So thus, the question for the administrative law judge became, which report was more consistent with the treatment records? Was the report of Dr. Miller, which diagnosed pneumoconiosis, which developed and progressed into complicated pneumoconiosis, more consistent with the treatment records which diagnosed pneumoconiosis? Or was the report of Dr. Scott, who did not diagnose pneumoconiosis, more consistent with the treatment records which diagnosed pneumoconiosis? As I understand his argument, he's saying he didn't look at all the treatment records. He just picked two out and ignored the others. And that's inappropriate. Well, first of all, I think if you look at the judge's decision, it's clear that he was familiar with all of the treatment records in this case. If you look at the Joint Appendix, pages 331 and 335 through 336, he discussed all of the treatment records, but it's just when he went to his basis for his decision, that's when he only talked about the two separate x-rays and the narrative records from the various hospitalizations. Now, when you look at the treatment records themselves, contrary to what the Employer's Council argues, I believe that they do support the fact that the minor had pneumoconiosis first. He looked at the 922 x-ray, which showed chronic interstitial lung disease, which the radiologist said was possibly related to history of coal mining with a 1.1-centimeter nodular density. And then we had the 6508 chest x-ray, which was read by Dr. John Z. Leaf, Jr. And I would point out that Dr. Leaf was also a B Reader and board-certified radiologist, so he was equally qualified as Drs. Miller and Scott to give an opinion concerning what the x-rays showed in this case. Dr. Leaf said that the 6508 chest x-ray showed nodular densities throughout both lungs, which Dr. Leaf thought was pneumoconiosis. And then we turn to the treatment records that the judge referenced, and the judge noted that the treatment records from September of 2006, June of 2008, March of 2009, and June through July of 2009 all contained diagnoses of complicated pneumoconiosis. So it would be my position that as these treatment records support a diagnosis of pneumoconiosis, the records support the administrative law judge's finding of pneumoconiosis. So after he found that the treatment records supported diagnosis of pneumoconiosis, he then permissibly found, based on Dr. Miller's reading, that this pneumoconiosis had progressed to complicated pneumoconiosis. The administrative law judge specifically noted that complicated pneumoconiosis is a progressive and irreversible disease. Hence the other name for complicated pneumoconiosis, progressive massive fibrosis. So therefore, it is the claimant's position that the administrative law judge permissibly found Dr. Miller's diagnosis of pneumoconiosis, which had progressed to complicated pneumoconiosis, to be more consistent with the treatment records than Dr. Scott's diagnosis of no pneumoconiosis. Now, as the employer has argued today and in its briefs, is that the administrative law judge selectively analyzed the evidence. And today the employer has argued that these various other treatment chest X-rays contradict the reading by Dr. Miller. But I don't agree with that position. When you look at the various treatment X-rays, first of all, as Judge Maltz pointed out, these doctors weren't looking at the evidence to get this man a check. They were trying to get this man well and save his life. So it's not unexpected that they didn't address whether pneumoconiosis was present or the size of any opacities they saw. But what they did see, they noted uniformly that there was chronic interstitial fibrosis and or opacities or nodules in these X-rays. Now, Dr. Bodkin's X-ray, could you tell us what that said? That did refer to pneumoconiosis, didn't it? Okay. Now, I believe you're talking there about the 6508 chest X-ray. Okay. Well, I think it's... To what extent did it establish evidence or report evidence of complicated pneumoconiosis? Well, first of all, I think it's instructive to note, now while at various times in the record that's been referred to as Dr. Bodkin's reading, when you actually look at the record, that's the one that Dr. Leaf read, who is a B Reader and Board Certified Radiologist. Now, he said that he thought these were probably nodules of pneumoconiosis, but he didn't address the size. So that doesn't really support complicated pneumoconiosis. Right. But I disagree with Mr. Sukup that they contradict the reading because, as Judge Motz pointed out, they weren't there to try to see if this man had pneumoconiosis or any particular form of pneumoconiosis. So the fact that they did not speak to the size of the opacities does not mean there were not large opacities, and it does not mean there were opacities. I think the key to the treatment records is that they indicate the presence of pneumoconiosis. So it's pretty clear this man who worked 34 years as an underground coal miner with at least 11 of those years before the dust regulations were passed in 1970 had pneumoconiosis. And then, as the judge noted, as pneumoconiosis is a progressive and irreversible disease, Dr. Miller's report shows us that that pneumoconiosis advanced through the course of years to the point where it became complicated pneumoconiosis. Now, I would point out that it's interesting to note that the employer's own physician, Dr. Castle, said that these changes on all these different x-rays that Mr. Sukup has discussed I'm sorry to interrupt you. I just may have a misimpression. Okay. I thought it was undisputed that this person had pneumoconiosis. I think so, too. It's undisputed. Right. The treatment records uniformly say he had pneumoconiosis. Okay. I just got the impression from your argument that that was an issue. No, no. What I meant, I guess maybe I didn't say it properly, I meant that these radiologists, when they didn't specifically mention the term pneumoconiosis, they weren't reading these records for whether he had pneumoconiosis. They were just trying to figure out what's wrong with him. Okay. Thank you. And Dr. Castle said that these changes on all these x-rays that Mr. Sukup mentioned could be due to either pneumoconiosis or rheumatoid arthritis. But when you look at the readings by Dr. Scott and Miller, neither of them noted any changes in the lungs due to rheumatoid arthritis. So that leaves us with the pneumoconiosis, which the employer's own physician, Dr. Castle, said these changes could be due to. Now, the employer at various times has raised the issue of pulmonary edema, but when you look at the record, the first question of pulmonary edema came up during the March of 2009 hospitalization. And, in fact, he was not actually diagnosed with pulmonary edema until it was noted that after the June 21, 2009 surgery, he developed pulmonary edema. So any pulmonary edema would not have affected these earlier x-rays. So, in conclusion, as the finding of the administrative law judge that Mr. Smith developed pneumoconiosis as a result of the 34 years of underground coal mine employment which he had progressed to complicated pneumoconiosis supported by the record, the decision of the administrative law judge to award benefits to Mr. Smith's widow should be affirmed. Thank you very much. Ms. Feldman? May it please the Court. My name is Jennifer Feldman, and I represent the Director, Office of Workers' Compensation Programs. Substantial evidence supported the ALJ's finding that Mr. Smith, who had 34 years of coal mine employment, had complicated pneumoconiosis. We urge the Court to affirm the board order affirming the ALJ's decision. The ALJ reasonably credited Dr. Miller's x-ray reading over Dr. Scott's. These were the only two readings in the record that were looking for pneumoconiosis. The ALJ looked at the treatment record x-rays to see if they could support one of these two readings, and they did. They support Dr. Miller's reading, and they undermine Dr. Scott's. Dr. Miller found that Mr. Smith had complicated pneumoconiosis and simple pneumoconiosis. Dr. Scott, as has been mentioned, was not able to see whether there was pneumoconiosis. He said there was too much congestive heart failure to see opacities, even if they were present. Could you tell me, again, why you say he picked those two reports to rely on? You say he picked them because they were the only two looking for pneumoconiosis. Your Honor, these were the only two x-ray readings in which the doctors were looking for pneumoconiosis. And both of these doctors were using the ILO classification system. Okay. I just want to be sure I understand. So you have the two experts that have one says he can't tell because things are bad, and the other one says you have advanced pneumoconiosis. And then the ALJ looks and takes two earlier reports, right? And in response to Judge Traxler's question, did you say that they are the only two? Were you talking about those two, or were you talking about the two experts? Oh, please forgive me for the confusion. No, I was speaking about Dr. Miller and Dr. Scott's x-ray readings. Those were the two experts that were looking for pneumoconiosis. So what was the reason why the ALJ looked to the two of the many reports in the record to support that expert's testimony? Right. The two x-rays that the ALJ looked to were particularly helpful. All of the treatment records as a whole support Dr. Miller's finding of complicated pneumoconiosis because they show, the majority of them show that opacities were present. So you're relying on what, Dr. Harold's finding of a nodule, what was it, a 1.1 centimeter nodule? And then what about this Bodkin-Lee? Did he actually talk about, in that reading, was there an actual discussion of the size of the nodule? In that second reading that you referred to, the 2008 x-ray, they did not talk about the size of the nodules. It is illuminating to look at those two x-rays in particular because the September 2006 x-ray showed the 1.1 centimeter nodule. And then a couple years later, in 2008, the doctor noted that there were densities that had formed since 2006. I thought on your way to answering my question, you were telling me it was actually all of the many treatment records supported this. But my question was, and that's good. I understand that you can elaborate on that. That would be great. But I also would like to know why these two were particularly, the 2006-2008. The 2006 x-ray is especially informative because it's the only treatment record x-ray that talks about the size of the opacity. And that one recognized that there was a 1.1 centimeter nodule, which is the, okay. It's just that you've heard what the argument is on the other side, but you didn't look at the whole record. And I guess I'm trying to tease out the response to that. Tell us why that's wrong. Well, as Mr. Staten explained, the ALJ was familiar with all of the treatment record x-rays, but it was reasonable for him to focus on two in showing why he credited Dr. Miller's complicated pneumoconiosis reading. These two particular x-rays were, they showed that there was a large opacity, and that opacities had developed, and pneumoconiosis is a progressive disease, so these were particularly illuminating x-rays. But it was also okay for the ALJ not to specifically address all of the remaining x-rays because they were not contradictory. They found opacities in large part. You're saying they just didn't measure the size of the opacities. Is that your point? They did not measure the size. Some of them didn't mention opacities. Some of them did not, and none of them were looking for pneumoconiosis specifically, so we got them from treatment for other illness. Sorry, go ahead. I'm getting a little bit confused about what your answer is. I understood you to say the ALJ picked those two, but it would have been reasonable for him to pick just those two because those were the only two readers looking for pneumoconiosis. I apologize. That goes back to the confusion I must have started at the beginning of my argument. When I said that only two doctors were looking for pneumoconiosis, I was not referring to the treatment record x-rays at all. I was not referring to the two. You're talking about the two experts. I was talking about the two experts, Drs. Miller and Scott, who had read the June 24, 2009 x-ray to see if there was pneumoconiosis. Is that clear? There's one. There's the company's expert that says he can't tell because things are so bad, and there is the other expert that says, yes, you have. But then in support of complicated pneumoconiosis being found by that expert, there are another two people that are in the treatment file. And your representation to us is that they are the only people that made a determination that talked about the size of the modules. Is that right? The 2006 x-ray in particular is the only one that specifically mentioned the size, and it says there's a 1.1-centimeter nodule. And so it was, in your view, all right for the claimant's expert to rely on those two rather than the other things in the treatment file because there was no opinion or was there any opinion in the treatment file saying, no, there is no pneumoconiosis? Correct. It was okay for the ALJ to rely on these two particular readings, and there was no opinion in the record saying, well, the two experts that provided opinions for LK said that they did not have enough evidence to find pneumoconiosis. I'm talking about the treatment file. Right. And there's nothing in the treatment files that says there's no pneumoconiosis. The diagnosis of pneumoconiosis is repeated throughout the treatment record. A lot of the x-ray readings show opacities. In fact, it's clear that Dr. Scott, the one that said he could not see any opacities, even if they were present, is the real outlier here because Drs. Miller and Scott looked at an x-ray taken on June 24, 2009. There were at least five other x-rays in the same week that LK pointed to in its opening brief that all noted that opacities were present. So those treatment records were saying support a finding that opacities are present. One of the two doctors that was reading an x-ray for pneumoconiosis found also that opacities were present. That was Dr. Miller, and he was able to talk about the size of those opacities. Those treatment records clearly support Dr. Miller's reading more than Dr. Scott's because Dr. Scott is the one who wasn't even able to see opacities, and they were clearly present throughout the treatment record. I'd also like to mention that the ALJ reasonably discredited the two doctors' opinions, Drs. Katzel and Dr. Bishida, because neither of them saw the most probative evidence, which were Dr. Miller and Dr. Scott's readings of the x-rays looking for pneumoconiosis. They did not see that evidence, and they were also equivocal in their opinions. They said that these radiographic changes could have been due to pneumoconiosis or they could have been due to rheumatoid arthritis or cardiac disease, to multiple things but did not say, in fact, what was causing these abnormalities on the x-ray. I'd be happy to answer any further questions. I don't think we have questions. Thank you very much. Thank you. Do we have a rebuttal, sir? Thank you. I think we need to clarify one thing here, at the very least. There are two forms of pneumoconiosis. There's simple, which is small opacities, and there's complicated, which is large opacities. Dr. Miller, this decision rests on whether or not the late minor had complicated pneumoconiosis. Simple would not be enough, because there's no evidence of death causation. So when the director says that all these treating records, because they talk about pneumoconiosis, that supports Dr. Miller? No. It supports Dr. Miller if they record a large opacity. Okay? That's the key issue, because that's what the ALJ found so interesting about those two treating records that he chose to credit. He says, well, they discuss these large opacities, and that's consistent with Dr. Miller's finding of large opacities. The 2006 x-ray, though, did show a 1.1-centimeter nodule. Is that Dr. Harold or Dr. Stone? I'm not sure. But there's a 2006 one that did show 1.1. Yes. I'm not disputing that the 06 and the 08 x-rays are two that the ALJ talks about described opacity. The problem is, if that's going to be your fixed point of crediting Dr. Miller, because of the presence of a large opacity described in a couple of these x-rays, if there are 20 other similar treating records that are also done for purposes of treatment and not litigation that don't talk about a large opacity, the judge has to at least explain why that doesn't cut against this finding, why he's weighing this in such a way that I can talk about these two and use those two to credit Dr. Miller, but I can ignore these other 20. That's not consistent with this court's precedent. In Addison, the court said an ALJ must adequately explain why he credited certain evidence and discredited other evidence. The court said where an ALJ has incorrectly weighed the evidence or failed to account for relevant record evidence, deference is not warranted and remand is frequently required. That's what I'm asking for here. Okay. But those 20 x-rays are more about the absence or more about being inconclusive, aren't they? I disagree. Okay. When I say 06 and 08, I mean the two that the ALJ talked about. Those also were for purposes of medical treatment. They also don't diagnose complicated pneumoconiosis, by the way. They talk about a large opacity, and I think they variously, as both the counsel talked about, they do variously talk about pneumoconiosis. But, again, just talking about pneumoconiosis doesn't mean that a large opacity is caused by pneumoconiosis. I mean, that's the key issue here. It is corroborative if those opacities exist, and then later on Dr. Miller said those opacities are complicated. Yes, yes. And, again, that's why I'm saying that on remand the ALJ, if you were to remand this case and tell the ALJ to discuss these other 20, he could still credit the two. I'm not saying it's impossible. But if we're really going to require ALJs to stick to weighing the evidence and talking about the relevant evidence in the record, as this court's case law says he must, he has to discuss these other 20. He's got to explain why when I have 20 x-rays out of 22 that don't talk about a large opacity, which is the key finding in finding complicated, why is that not more persuasive than the other two? Maybe there's a reason. Well, he does talk about Dr. Harreld. He talks about Dr. Bodkin. I mean, I think maybe you're short-shifting him a little bit. He's talking about Dr. Rosendo's ill-defined density. He is discussing other x-rays. He talks about that in his factual session. But let's analogize to a Supreme Court case, for example. If we have part one of a Supreme Court case which always talks about the facts, would we just be content if in part two the court just says affirmed? No. These records, after reciting them factually on page 14 of his opinion, he says these records are consistent with Dr. Miller's interpretation of June 2009, a full three years following the initial diagnosis of a 1.1 centimeter nodule. He talks about the 06 and the 08 x-rays being consistent with that finding because there's a large opacity. What he does not discuss is the fact that what about the other treating records that don't show this large opacity? That's not consistent with the progressive nature. Okay, but you're suggesting he just plucked two and ignored everything else. He didn't ignore everything else. He certainly didn't explain each and every x-ray. You're saying he's got to do that. No, I'm saying in his analysis section, which is the key portion, he does not discuss the other x-rays. He doesn't explain why an absence of large opacity in every other x-ray in this case, not described anyway, somehow does not weigh against it.  But not why he did not explain why the other side of the scale doesn't overcome that. This isn't a weighing of evidence at all. It's looking at one side of the scale. I mean, we need the ALJ to discuss the contrary evidence and explain why it does not cut against it. And he may find that it doesn't. But we don't have that here on this record. If there are no further questions, I will conclude. We ask our clerk to adjourn court, and then we'll come down and greet the lawyers. This honorable court stands adjourned, sign of the die. God save the United States and this honorable court.
judges: Diana Gribbon Motz, William B. Traxler, Jr., Barbara Milano Keenan